KAUFMAN LLC & ALAN KAUFMAN,
    *Plaintiffs*,

      v.

HERBERT FEINBERG, *et al.*,
    *Defendants*.

No. 3:17-cv-958 (VAB)

## RULING AND ORDER ON MOTIONS TO DISMISS

Kaufman LLC, a Connecticut limited liability company, and Alan Kaufman, an attorney (collectively "Plaintiffs" or "Kaufman"), have sued Herbert Feinberg, Norman Arnoff, Richard Derzaw, Steven Storch, and Jason Levin for (1) vexatious litigation under Connecticut common law; (2) vexatious litigation under Conn. Gen. Stat. § 52-568; (3) civil conspiracy; and (4) violation of § 487 of New York Judiciary Law, NY JUD § 487, all related to four sets of grievance complaints filed in Connecticut, New York, Massachusetts, and the District of Columbia.

Mr. Storch and Mr. Levin have jointly moved to dismiss the Complaint for lack of personal jurisdiction, or alternatively, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Mr. Derzaw has separately moved to dismiss Count Four of the Complaint.

For the following reasons, the motions to dismiss are **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

<u>The Parties</u>

Kaufman LLC is allegedly a Connecticut limited liability company, and Alan Kaufman is or was an attorney allegedly licensed in the District of Columbia and Massachusetts. Am. Compl., ECF No. 146 ¶ 2 (May 27, 2019). Mr. Kaufman is admitted in this Court. *Id.*

Herbert Feinberg is allegedly a businessman residing in New York and Florida. *Id.* ¶ 3.

Norman Arnoff allegedly an attorney residing and domiciled in New York, and is allegedly admitted to practice in New York and Florida. *Id.* ¶ 4. He allegedly holds himself out to the public as an expert on legal ethics. *Id.*

Richard Derzaw is allegedly a litigation attorney residing and domiciled in New York. *Id.* ¶ 5. Mr. Feinberg allegedly used Mr. Derzaw's services "for an array of family, personal and business matters." *Id.* ¶ 50. Mr. Derzaw is allegedly admitted to practice in Florida. *Id.* ¶ 54.

Steven Storch and Jason Levin are also allegedly litigation attorneys residing and domiciled in New York, and both are allegedly shareholders in the firm of Storch, Amini & Munves. *Id.* ¶¶ 6-7. Mr. Feinberg allegedly used Mr. Storch and Levin's services on multiple legal matters at all times related to this action. *Id.* ¶ 50. Mr. Storch was allegedly aware of Mr. Kaufman's bar admissions, and allegedly twice moved for Mr. Kaufman's admission *pro hac vice* in New York state and federal courts. *Id.* ¶ 51.

<u>The Kaufman/Feinberg Relationship</u>

From March 2009 to September 2010, Kaufman allegedly represented Mr. Feinberg under a year-to-year-contract for litigation related services involving Feinberg or his companies. *Id.* ¶ 8. This "retainer" agreement was allegedly for a one-year term with no automatic renewal.

*Id.* ¶¶ 8-9.

In March 2010, Mr. Feinberg allegedly renewed the retainer for an additional one-year term. *Id.* ¶ 9. When Kaufman allegedly declined to further represent Mr. Feinberg or his entities until his outstanding fees on a non-retainer matter were paid, Mr. Feinberg allegedly later terminated retainer "in retaliation." *Id.*

Throughout the period of Kaufman's alleged representation of Mr. Feinberg, Mr. Kaufman was allegedly admitted *pro hac vice* in state or federal courts in New York, Pennsylvania, Florida and New Jersey. *Id.* ¶ 10. Mr. Kaufman allegedly consulted Mr. Derzaw and Mr. Storch as local counsel. *Id.* Kaufman allegedly "actively participated in two filed cases, one of which was in multiple jurisdictions." *Id.* ¶ 11.

In September 2010, Kaufman allegedly resigned from representing Mr. Feinberg and his controlled entities due to alleged nonpayment of fees. *Id.* ¶ 12.

In August 2013, after allegedly receiving unspecified malpractice threats from Mr. Feinberg, Kaufman filed a declaratory judgment action[1] in the United States District Court for the District of Connecticut (this "District") relating to a tolling agreement that Mr. Storch and Levin had allegedly proposed but never executed. *Id.* ¶ 12. Shortly after filing that action, Kaufman amended that complaint to include counts for unpaid fees related to cases in New York and Pennsylvania, and the remainder of sums allegedly due under the retainer agreement. *Id.* ¶ 14. The fee-related claim allegedly arose from Kafuman's work in *Fresh Harvest River LLC v. First Commonwealth Bank, et al.*, No. 2:10-cv-1140 ("FHR matter"). *Id.* ¶ 15. The other matter was allegedly a malpractice claim by Mr. Feinberg against a former attorney. *Id.* ¶ 16. Mr. Feinberg allegedly lost both cases, which were allegedly handled by Mr. Derzaw, Storch, Levin,

---

[1] That case, *Kaufman LLC v Feinberg et al.*, No. 3:13-cv-1259 (VAB), is also pending before this Court, and scheduled for trial in late March.

3

and Arnoff at various times after Kaufman withdrew. *Id.* ¶¶ 17-18.

Kaufman alleges that Mr. Feinberg invested approximately $2.5 million in Fresh Harvest River, the entity in the FHR matter. *Id.* ¶ 20. In addition, Mr. Feinberg allegedly paid Mr. Storch and Derzaw over $2.5 million in legal fees related to the two unsuccessful cases, *id.*, and allegedly paid over $2.5 million to Mr. Storch and Derzaw in the unsuccessful malpractice case, *id.* ¶ 21. Mr. Storch's firm allegedly collected at least $7.5 million in total fees from Mr. Feinberg on an array of cases. *Id.*

<u>The Grievance Complaints</u>

Mr. Feinberg allegedly has a history of litigation against his lawyers, his former wife's lawyers, his accountants, business partners, and more, with most of them allegedly unsuccessful, and spanning over thirty years. *Id.* ¶ 23.

Kaufman alleges that despite Mr. Feinberg's wealth—allegedly over $400 million in various stock and $30 million in real estate and a private jet—nearly all of his business ventures have failed. *Id.* ¶¶ 24-25. Kaufman alleges that Mr. Feinberg's "primary activity" is litigation, which Mr. Feinberg allegedly described as his "hobby" and the "reason [he] get[s] up every morning." *Id.* ¶ 25.

On June 11, 2014, Mr. Feinberg allegedly filed four nearly identical grievance complaints against Kaufman in Connecticut, New York, Massachusetts, and the District of Columbia. *Id.* ¶ 26. Mr. Storch and Levin were allegedly actively involved in the initial preparation and drafting of the complaints, while the actual filings were allegedly by Mr. Feinberg, Derzaw, and Arnoff. *Id.* ¶ 27. Kaufman alleges that none of the attorney Defendants were admitted to practice in any of the jurisdictions except for New York, nor were they duly registered under the laws of Connecticut and Massachusetts. *Id.* ¶¶ 28-29. Further, they allegedly did not engage local

counsel to advise on the law relating to admissions and grievances. *Id.* ¶ 30.

On November 7, 2014, the State Grievance Committee of Connecticut ("Connecticut Grievance Committee") allegedly dismissed the complaint and found, *inter alia*, that Mr. Kaufman did not misrepresent his credentials or improperly attempt to collect legal fees. *Id.* ¶¶ 32-33.

On September 17, 2017, the Bar Disciplinary Council for the District of Columbia ("D.C. Disciplinary Council") allegedly dismissed the grievance and found an absence of probable cause. *Id.* ¶ 34. The D.C. Disciplinary Council also allegedly dismissed the referred grievance complaint filed in New York. *Id.* ¶ 35.

On April 4, 2018, the Board of Bar Overseers in Massachusetts allegedly closed the complaint file. *Id.* ¶ 36.

Mr. Feinberg allegedly admitted in depositions that the grievance complaints were undertaken to "caus[e] trouble" for Kaufman in alleged reprisal for Kaufman's seeking of unpaid fees. *Id.* ¶ 37.

<u>The Fee Case Filings</u>

Kaufman alleges that Mr. Feinberg also filed pleadings in *Kaufman*, No. 3:13-cv-1259, "that were directly contradicted by, and irreconcilable with, the grievance complaint." *Id.* ¶ 41. Mr. Storch, Levin, and Derzaw were allegedly "directly involved in funneling information" to Jeffrey Mirman, Mr. Feinberg's attorney in the other lawsuit with Kaufman. *Id.* ¶¶ 43-44.

All the attorneys were allegedly "fully aware that the position [Mr.] Feinberg was taking, and the evidence he submitted in support of his motion to dismiss, were both false and in direct contradiction of the sworn factual allegations made by them in the grievance filings." *Id.* ¶ 46. Kaufman alleges that Mr. Mirman was aware that Mr. Feinberg's filings contained allegedly

false allegations, because he was allegedly personally copied and involved. *Id.* ¶ 47.

Other Issues

Kaufman alleges that Mr. Feinberg "never expressed any concern with the issues that he advanced four years later in his grievances, which he [allegedly] admits to having undertaken in retaliation for Kaufman having brought suit for his unpaid fees." *Id.* ¶ 61. The attorney Defendants were allegedly all aware of Mr. Feinberg's alleged motivation. *Id.* ¶ 62.

In June 2010, Mr. Feinberg allegedly contacted Mr. Kaufman to first express his concern about his investments in Fresh Harvest River. *Id.* ¶ 63. Mr. Feinberg allegedly asked in multiple conversations for Mr. Kaufman to review his litigation options to protect his investments in Fresh Harvest River. *Id.* ¶ 64. Although Mr. Kaufman allegedly had played no role in the negotiation of the Fresh Harvest River deal, he thereafter allegedly provided due diligence document lists for Mr. Feinberg. *Id.* ¶ 65.

Mr. Feinberg allegedly disregarded Mr. Kaufman's advice, and with one exception involving Mr. Derzaw, allegedly never sought any documentation pertinent to Fresh Harvest River's leases, equipment, or loan status. *Id.* ¶ 66. Mr. Feinberg instead allegedly "under[took] the FHR investments blindly." *Id.* ¶ 67.

Mr. Kaufman allegedly acquiesced to Mr. Feinberg's requests and allocated all of his time to prepare for the Fresh Harvest River filing in July 2010. *Id.* ¶ 74.

From July through August 2010, Kaufman was allegedly working full time on the FHR matter alongside Mr. Storch and his firm. *Id.* ¶ 75.

Unpaid Fees

Based on Mr. Feinberg's alleged retroactive renegotiations of fees, including with Mr. Storch and Derzaw, Kaufman allegedly began billing Mr. Feinberg in the FHR matter twice

monthly "to avoid a similar problem." *Id.* ¶ 76.

When Mr. Feinberg allegedly failed to pay his invoices and attempted a second time to renegotiate them, Kaufman allegedly refused to undertake further work until he was paid and unless Mr. Feinberg "committed to prompt and full payment of future invoices." *Id.* ¶ 77. When Mr. Feinberg allegedly failed to make those commitments, Kaufman stopped working on the FHR matter. *Id.* ¶ 79.

Kaufman further alleges that Mr. Storch and Levin feared *Kaufman*, No. 3:13-cv-1259, "would yield information that might undermine the FHR litigation, and undertook, with Derzaw, to create problems for Kaufman's law practice." *Id.* ¶ 81.

**B.     Procedural History**

On June 9, 2017, Kaufman first filed suit, alleging one count of vexatious litigation against Mr. Feinberg, Mr. Arnoff, and Mr. Derzaw. Compl., ECF No. 1 (June 9, 2017).

The parties engaged in extensive motion practice, with several defendants filing motions to dismiss. Docket Entries, ECF Nos. 11-145 (June 21, 2017-May 20, 2019).

On May 27, 2019, Kaufman filed an Amended Complaint, adding Mr. Storch and Levin as Defendants, and alleging the following as claims for relief: (1) vexatious litigation under Connecticut common law, Am. Compl. ¶¶ 82-103; (2) vexatious litigation under Conn. Gen. Stat. § 52-568, *id.* ¶¶ 104-113; (3) civil conspiracy under common law, *id.* ¶¶ 114-122; and (4) violation of New York Judiciary Law § 487 for deceiving the New York Attorney Grievance Committee regarding the grievances filed, *id.* ¶¶ 123-131.

On June 10, 2019, Mr. Derzaw moved to dismiss Count Four of the Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 150 (June 10, 2019) ("Derzaw Mot."); Mem. of

Law in Supp. of Derzaw Mot., ECF No. 150-1 (June 10, 2019) ("Derzaw Mem.").

On July 22, 2019, Mr. Levin and Mr. Storch also moved to dismiss the Amended Complaint. Mot. to Dimiss the Second Am. Compl., ECF No. 157 (July 22, 2019) ("Storch-Levin Mot."). They argue three separate grounds for dismissal: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) lack of subject-matter jurisdiction applicable to Counts One through Three under Federal Rule of Civil Procedure 12(b)(1); and (3) failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 1-3.

On August 5, 2019, Kaufman timely opposed Mr. Derzaw's motion to dismiss. Pls' Opp'n to Derzaw Mot., ECF No. 160-1 (Aug. 5, 2019) ("Pls.' Opp'n").

On August 15, 2019, Mr. Derzaw replied. Reply to Pls.' Opp'n, ECF No. 164 (Aug. 15, 2019) ("Derzaw Reply").

On August 15, 2019, the case was reassigned to the Honorable Victor A. Bolden. Order of Transfer, ECF No. 165 (Aug. 15, 2019).

Kaufman moved for several extensions of time to respond to Mr. Levin and Mr. Storch's motion to dismiss, Docket Entries, ECF Nos. 166, 167, 169 (Aug. 22, 2019, Aug. 29, 2019, Oct. 8, 2019), and the Court granted two, *see* Order, ECF No. 168 (Aug. 30, 2019) (finding as moot the first motion for extension of time); Order, ECF No. 170 (Oct. 9, 2019). But Kaufman did not ultimately respond to their motion to dismiss.

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) ("the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1350, 548 (1969)).

### B.    Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The

plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

A court must apply Connecticut's long-arm statute, which provides that "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 234 Conn. 281, 286 (Conn. 1995). If the Court has personal jurisdiction over the defendant under the long-arm statute, then the Court will consider whether jurisdiction would comport with the due process clause of the United States Constitution. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 723 F.3d 161, 168 (2d Cir. 2013); *see also Lombard Bros., Inc. v. General Asset Management Co.*, 190 Conn. 245, 249-50 (Conn. 1983) (explaining that the Court need only address due process considerations if it determines that jurisdiction exists under the long-arm statute).

**C.      Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review

"to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Two motions to dismiss have been filed in this case. The Court first addresses the motion to dismiss filed by Mr. Storch and Levin, then proceeds to that filed by Mr. Derzaw.

### A. The Claims Against Storch and Levin

#### 1. The application of Fed. R. Civ. P. 12(b)(1)

Mr. Kaufman bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he filed the Complaint. *See Scelsa v. City Univ.*, 76 F.3d 37, 40 (2d Cir. 1996).

Mr. Storch and Levin argue that they are entitled to immunity from suit and claims for damages related to the grievances filed in Massachusetts, the District of Columbia, and New York. Storch-Levin Mot. at 11-16. According to them, the Court thus lacks subject matter jurisdiction over claims related to these grievance complaints. *Id.* at 11.

The Court agrees.

Federal courts sitting in diversity apply the choice-of-law provisions of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor*, 313 U.S. 487, 496 (1941); *Forest Park Pictures v. Universal Television Network*, 683 F.3d 424, 433 (2d Cir. 2012). When evaluating

choice of law questions sounding in tort, Connecticut courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws, § 145. *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558 (2016). The relevant factors that are considered are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and business of the parties, and (4) the place where the relationship, if any, between the parties is based. *Id.* at 558-59 (quoting *O'Connor v. O'Connor*, 201 Conn. 632, 652 (1986)). "Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state." *Turner v. Boyle*, 116 F. Supp. 3d 58, 75-76 (D. Conn. 2015) (internal citations omitted); *see also Blake v. Levy*, 191 Conn. 257, 262-63 (1983) (describing vexatious litigation and malicious prosecution as "kindred torts" "where the claimed impropriety arises out of previous litigation").

In this case, Kaufman's claims are based largely on conduct that occurred outside of Connecticut. Although one of the four grievances was filed in Connecticut, Am. Compl. ¶ 26, and one Plaintiff, Kaufman LLC, is allegedly a Connecticut limited liability company, those are the only connections to Connecticut, *id.* ¶ 2. Mr. Kaufman is licensed to practice law by the District of Columbia, not Connecticut. *See id.* (alleging that he is "admitted in this court" and "at times pertinent to this Complaint, licensed in Massachusetts, where he has subsequently taken retired status"). And significantly, none of the Defendants have any connection to Connecticut besides the single grievance complaint that was filed here. *Id.* ¶¶ 3-7 (listing Defendants' domiciles as New York or Florida).

Defendants are all residents of at least New York, *id.*, and Kaufman's suit against them is

based on grievance complaints filed in Connecticut, New York, Massachusetts, and the District of Columbia, *id.* ¶ 26. "During the approximately 18 months during which [Plaintiffs] represented Feinberg, the matters on which [they consulted were for filings or contemplated filings] in state and/or federal courts in New York, Pennsylvania, Florida and New Jersey," and not Connecticut. *Id.* ¶ 10. Thus, Connecticut is not the place where the relationship between the parties is based. *See, e.g.*, *id.* ¶ 129 (alleging in Count Four that the attorney Defendants "combined to prepare and file a grievance against Kaufman in New York that contained false, deceptive and misleading information for purposes of causing 'trouble' to Kaufman on behalf of defendant Feinberg"). As a result, at least with respect to the three grievance complaints filed out-of-state, the laws of those states will apply as they have the "most significant relationship" with the underlying respective grievance complaints. *See W. Dermatology Consultants*, 322 Conn. at 558 (citing the test from Restatement (Second) of Conflict of Laws, § 145).

Regarding the grievance complaint filed in Massachusetts, the Massachusetts Supreme Judicial Court Rule 4:01 provides:

> Section 9. Immunity.
> (1) Complaints submitted to the Board or to the bar counsel shall be confidential and absolutely privileged. The complainant shall be immune from civil liability based upon his or her complaint; provided, however, that such immunity from suit shall apply only to communications to the Board or the bar counsel and shall not apply to public disclosure of information contained in or relating to the complaint.

S.J.C. Rule 4:01 § 9(1) (emphasis omitted).

As a result, Defendants are immune from civil liability for their involvement in filing the grievance complaints in Massachusetts. *See In re Lupo*, 447 Mass. 345, 353 (2006) (finding that "commencement of a civil action seeking damages . . . violated [Massachusetts Rules of Professional Conduct 8.4(d) and 8.4(h)], because . . . [the] grievance . . . was absolutely

privileged and immune from civil liability pursuant to S.J.C. Rule 4:01, § 9(1)").

Accordingly, all claims related to the Massachusetts grievance complaint under Counts One, Two, and Three are dismissed.

Regarding the grievance complaint filed in the District of Columbia, D.C. Bar Rules provide that "[c]omplaints submitted to the Board or Disciplinary Counsel shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained." D.C. Bar Rule XI § 19(a). As a result, Defendants are immune from civil liability for their involvement in filing the grievance complaints in the District of Columbia. *See In re Spikes*, 881 A.2d 1118, 1123 (D.C. Ct. App. 2005) ("D.C. Bar Rule XI, § 19(a) prohibits a litigant from maintaining a cause of action based on an ethical complaint to Bar Counsel." (internal citations omitted)).

Regarding the grievance complaint filed in New York, "relevant statements made in judicial or quasi-judicial proceedings are afforded absolute protection so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015). "[T]he grievance committee functions as a quasi-judicial body through its investigation of complaints and administration of disciplinary proceedings." *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365-66 (2007). Significantly, the absolute privilege "attaches to such statements irrespective of an attorney's motive for making them." *Id.* (citing *Wiener v. Weintraub*, 22 N.Y. 2d 330, 331 (1968)).

> We may assume that on occasion false and malicious complaints will be made. But, whatever the hardship on a particular attorney, the necessity of maintaining the high standards of our bar -- indeed, the proper administration of justice -- requires that there be a forum in which clients or other persons, unlearned in the law, may state their complaints, have them examined and, if necessary, judicially determined. A lawyer against whom an unwarranted complaint has been lodged will surely not suffer injury to his reputation among the members of the Grievance Committee since it is their function to determine whether or not the charges are supportable.

*Wiener*, 22 N.Y.2d at 332. As a result, Defendants are immune from civil liability

for their involvement in filing the grievance complaints in New York.

Because Kaufman's claims related to the grievance complaint filed in Connecticut

remain, as does the claim under New York law in Count Four, the Court will next analyze Mr.

Storch and Levin's arguments related to lack of personal jurisdiction.

### 2. The application of Fed. R. Civ. P. 12(b)(2)

Connecticut's long arm statute provides that a nonresident individual foreign will be

amenable to a suit in this state if that person:

> (1) [t]ransacts any business within the state;
> (2) commits a tortious act within the state, except as to a cause of
> action for defamation of character arising from the act;
> (3) commits a tortious act outside the state causing injury to person
> or property within the state, except as to a cause of action for
> defamation of character arising from the act, if such person or agent
> (A) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or (B)
> expects or should reasonably expect the act to have consequences in
> the state and derives substantial revenue from interstate or
> international commerce;
> (4) owns, uses or possesses any real property situated within the
> state; or
> (5) uses a computer, as defined in subdivision (1) of subsection (a)
> of section 53-451, or a computer network, as defined in subdivision
> (3) of subsection (a) of said section, located within the state.

Conn. Gen. Stat. § 52-59b.

A "nonresident individual who has not entered this state physically nevertheless may be

subject to jurisdiction in this state under § 52–59b (a)(1) if that individual has 'invoked the

benefits and protection of Connecticut's laws' by virtue of his or her 'purposeful Connecticut

related activity.'" *Ryan v. Cerullo*, 282 Conn. 109, 120 (2007) (finding no personal jurisdiction

where "the defendants derived only minimal income from Connecticut residents, did not solicit

business in Connecticut and did not promote themselves as a national accounting firm").

Mr. Storch and Levin first argue that, as non-resident individual defendants, they do not have the requisite contacts to satisfy either Connecticut's long-arm statute or the minimum contacts required under the Due Process Clause of the Fourteenth Amendment. Storch-Levin Mot. at 3-4. According to them, Plaintiffs "do not, and cannot, allege that Attorney Storch and Attorney Levin transacted business in Connecticut," nor are there any allegations that they owned real estate or used a computer or network in Connecticut. *Id.* at 4-5. Mr. Storch and Levin emphasize that neither of them reside, have offices, or mailing addresses in Connecticut; neither of them owns or rents property here; neither of them practices law or is licensed to practice law here; and neither of them entered Connecticut in connection with any of the underlying matters. *Id.* at 5.

Further, they emphasize that they did not file any grievance complaint against Plaintiffs in Connecticut, "nor for that matter anywhere." *Id.* at 6. Because "[t]here is no reasonable basis upon which to conclude that Attorney Storch and Attorney Levin anticipated litigation in Connecticut," they argue that this Court need not consider whether the exercise of jurisdiction comports with the US Constitution's Due Process Clause. *Id.* at 6-7.

Mr. Storch and Levin next argue that even if Plaintiffs could make a *prima facie* showing of personal jurisdiction under Connecticut's long-arm statute, this "exercise of jurisdiction over them here would not pass consitutional muster." *Id.* at 7. They submit there is no specific jurisdiction because "Plaintiffs' claims for vexatious litigation did not arise out of any contacts by Attorney Storch and Attorney Levin in Connecticut." *Id.* at 8. According to them, their "purported involvement in the 'initial preparation and drafting of complaints' does not create a connection" with Connecticut to establish purposeful availment. *Id.* (citing Am. Compl. ¶ 27).

Mr. Storch and Levin also argue that general jurisdiction does not follow, because "the indisputable facts establish that [they] do not maintain contacts in Connecticut, let alone systematic and continuous contacts." *Id.* at 9 (quotation marks omitted). Consequently, they conclude that "consitutional due process would be violated by forcing individuals that have essentially zero connection with Connecticut to be dragged into Court here, " so all claims against them should be dismissed under lack of personal jurisdiction. *Id.* at 10.

The Court agrees.

The "plaintiff bears the burden of showing that the court has jurisdiction over the defendant," *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 206, and "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, [the] plaintiff[s] must make a prima facie showing that jurisdiction exists," *Licci*, 673 F.3d 50 at 59. Kaufman has not done so, and has failed to even respond to this motion to dismiss.

Kaufman has not alleged that Mr. Storch and Levin committed any of the following in Connecticut, either themselves or through an agent: transact business, own, use, or possess real property; use a computer; or use a computer network. *See* Conn. Gen. Stat. § 52-59b (listing how a nonresident individual may be amenable to suit in a Connecticut court).

Kaufman has fallen far short of establishing this Court's personal jurisdiction over Mr. Storch and Levin.

Accordingly, any remaining claims against Mr. Storch and Levin will be dismissed.

**B.      The Claims Against Derzaw**

Section 487 of the New York Judiciary Law, upon which Count Four is based, states:

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

NY JUD § 487.

Mr. Derzaw submits that Count Four fails to state a claim upon which relief can be granted. Because complaints to grievance panels are "absolutely privileged," Plaintiffs cannot succeed on their claim that Mr. Derzaw violated New York's § 487 by filing grievances on behalf of his client, Mr. Feinberg. Derzaw Mot. at 1; Derzaw Mem. at 7 (citing *Wiener*, 22 N.Y. 2d at 330). Mr. Derzaw further argues that even if § 487 applied, New York law requires the claimed violations to be pled with specificity. Derzaw Mem. at 8 (citing *Goldner v. Sullivan, Gough, Skipworth, Summers, and Smith, et al.*, 482 N.Y.S.2d 606 (1984)). According to Mr. Derzaw, Count Four "does not identify a specific fraudulent or deceitful communication or statement made to the grievance panel," and should be dismissed. *Id.*

In response, Kaufman first argues that Mr. Derzaw waived his immunity argument because he failed to argue it in his first motion to dismiss, when "[h]is exposure to vexatious litigation liability for his New York filings were . . . obvious." Pls.' Opp'n at 4-5. Kaufman also argues that this court, in a prior order issued by the Honorable Alfred V. Covello, already ruled that a vexatious litigation claim could proceed here. *Id.* at 5. Thus, according to Kaufman, "[t]he Court's previous ruling that vexatious litigation claims are viable is therefore law of the case." *Id.* Next, Kaufman argues that this Court must apply Connecticut's laws relating to vexatious litigation, which invalidate Mr. Derzaw's claims of immunity. *Id.* at 6-8. Finally, Kaufman disagrees with Mr. Derzaw's reading of *Wiener*, 22 N.Y.2d at 332, and distinguishes the factual

situation. *Id.* at 9. Instead, Kaufman contends that § 487 "does not protect lawyers from any claims based on deceit," *id.* (emphasis omitted), and he argues that the Amended Complaint is "replete" with detail of Mr. Derzaw's alleged "deceit and collusion," *id.* at 10-11.

In reply, Mr. Derzaw first emphasizes that his prior motion to dismiss was based on the amount-in-controversy requirement, so "Plaintiffs' claim that Derzaw has improperly sought a 'second bite at the apple' by moving to dismiss a cause of action that was not even asserted in its Amended Complaint is baseless." Derzaw Reply at 1-2. Next, Mr. Derzaw argues that instead of applying Connecticut law, this Court should apply the law of the state where the proceedings are instituted, which in this case is New York. *Id.* at 2. Mr. Derzaw submits that "neither of the choice of law analyses lead to a conclusion that a New York statute should be interpreted using Connecticut law. " *Id.* at 3. According to Mr. Derzaw, "Connecticut does not have an important policy interest in interpreting a New York statute pursuant to Connecticut common law, especially where no cause of action exists in New York." *Id.* at 7 (emphasis omitted).

The Court agrees.

First, Mr. Derzaw has not waived any arguments related to his immunity, because his first motion to dismiss was only based on the amount-in-controversy requirement, and it was filed prior to Kaufman's Amended Complaint, which added Count Four.

Second, as the Court has already explained, Connecticut's choice of law rules should govern, and the factors from Restatement (Second) of Conflict of Laws, § 145, should be applied. *See infra* at 12-13. Even if Connecticut is construed to be the place where the injury occurred or the place where the conduct causing the injury occurred based on the grievance complaint filed in Connecticut, the latter two factors in the Restatement favor the application of New York law, especially with respect to a claim based on a New York statute against New

York-licensed attorneys and a New York-domiciled client. *See, e.g.*, *Benefit Concepts New York, Inc. v. New England Life Ins. Co.*, No. 3:03-cv-1456 (DJS), 2004 WL 1737452, at *6 (D. Conn. July 30, 2004) (finding that the Restatement directed the court to apply New York law where "a) the alleged injuries occurred mostly in New York; b) the cause of the injuries were actions taken or acknowledged mostly in New York; c) a majority of the parties were incorporated or operating from New York at the time of the activities that form the basis for the suit; and d) the relationship of the parties, during most of the relevant period, was focused on New York").

Because "New York has the greater contact with the parties in this case," New York law has the most significant relationship to Count Four, based on NY JUD § 487. *See Dugan v. Mobile Med. Testing Servs.17, Inc.*, 265 Conn. 791, 803-04 (2003) ("Therefore, because the injury causing conduct occurred in New York, and because the relationship between the parties was centered in New York, [Restatement] § 145(2)(b) and (d) favors application of New York law.").

Applying New York law, the Court must dismiss Count Four, because of the absolute privilege attached to the grievance complaints. *See, e.g.*, *Front*, 24 N.Y.3d at 718 ("[R]elevant statements made in judicial or quasi-judicial proceedings are afforded absolute protection[.]"

Accordingly, Count Four is dismissed in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, both motions to dismiss are **GRANTED**.

The Clerk of Court is directed to terminate Mr. Storch and Levin as Defendants.

All claims based on grievance complaints filed in New York, Massachusetts, and the District of Columbia are dismissed, as is Count Four.

At this point, only Counts One, Two, and Three remain to the extent they are based on

the grievance complaint filed in Connecticut.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of January, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE