## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KAUFMAN LLC & ALAN KAUFMAN,
*Plaintiffs*,

v.

ESTATE OF HERBERT FEINBERG *et al.*,
*Defendants.*

No. 3:17-cv-958 (VAB)

## RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Kaufman LLC ("Kaufman"), a Connecticut limited liability company, and Alan Kaufman

("Mr. Kaufman"), an attorney (collectively, "Plaintiffs"), have sued the Estate of Herbert

Feinberg (the "Estate"), Norman Arnoff, and Richard Derzaw (collectively "Defendants"[1]) for:

(1) vexatious litigation under Connecticut common law, (2) vexatious litigation under

Connecticut General Statute § 52-568, and (3) civil conspiracy.[2] Second Am. Compl., ECF No.

146 (May 27, 2019) ("Compl."); Order on Mots. to Dismiss, ECF No. 172 (Jan. 31, 2020)

("Order on MTDs").

On December 5, 2023, Mr. Derzaw and the Estate each filed a motion for summary

judgment. Def. Richard Derzaw's Mot. for Summ. J., ECF No. 333 (Dec. 5, 2023) ("Derzaw

Mot."); Def. Estate of Herbert Feinberg's Mot. for Summ. J. and Mot. to Dismiss for Failure to

Prosecute, ECF No. 334 (Dec. 5, 2023) ("Estate Mot.").

For the following reasons, the Court **GRANTS** the motions for summary judgment as to

all counts of the Complaint.

---

[1] Steven Storch and Jason Levin were named as Defendants in the Amended Complaint, ECF No. 146 (May 27, 2019), but were subsequently dismissed, *see* Order on MTDs at 21.
[2] The Second Amended Complaint contained additional claims, which have since been dismissed. *See* Order on MTDs at 21.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Given the significant length of this litigation, the Court assumes familiarity with the

factual background and procedural history of the case and only includes events relevant to the

motions for summary judgment.

    A.  **Factual Background[3]**

Mr. Kaufman, an attorney, is the sole member and manager of Kaufman LLC, a

Connecticut limited liability company with a business address in Darien, Connecticut. Statement

Pursuant to Local Rule 56(a)(1) in Supp. of Def. Richard Derzaw's Mot. for Summ. J. ¶¶ 17–18,

ECF No. 331-2 (Dec. 5, 2023) ("Derzaw SMF"); Compl. ¶ 2.

From March 2009 to September 2010, Mr. Kaufman represented Mr. Feinberg under a

year-to-year-contract for litigation-related services involving Mr. Feinberg or his companies.

Compl. ¶ 8; Local Rule 56(a)(1) Statement in Supp. of Def. Estate of Feinberg's Mot. for Summ.

J. and Mot. to Dismiss for Failure to Prosecute ¶¶ 2–5, ECF No. 336 (Dec. 5, 2023) ("Estate

SMF").

Mr. Kaufman served as Mr. Feinberg's general in-house counsel and provided a range of

services, such as: providing advice to Mr. Feinberg; drafting agreements and communicating

with third-parties on behalf of Mr. Feinberg, including the preparation of a trust agreement and

other estate planning matters; providing advice and representation regarding a life insurance

---

[3] To determine the undisputed facts in this case, the Court relies upon the parties' Local Rule 56(a) Statements, to the extent that they comply with the Federal Rules of Civil Procedure and the Local Rules of this District, and evidence cited therein. Plaintiffs have failed to file a Local Rule 56(a)(2) Statement in response to Defendants' Local Rule 56(a)(1) Statements. "Where a party asserts a fact and the opposing party either fails to deny the assertion or, in issuing a denial, the party does not cite to evidence disputing its accuracy, the Court deems such fact admitted." *Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-00669 (VLB), 2015 WL 5797008, at *1 n.1 (D. Conn. Sept. 30, 2015); *see also* D. Conn. L.R. Civ. P. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]"). The Court therefore deems admitted each material fact set forth in Defendants' Local Rule 56(a)(1) Statement, to the extent that it is supported by the evidence.

policy, a boat in Florida, a bond posted in connection with an appeal, a property in the Hudson Valley, an investment in a company called Citibabes, and a certificate of deposit with Astoria Bank; and assisting with the termination of employees, including preparation of a promissory note and confidentiality agreement. Estate SMF ¶¶ 10–11.

Throughout the period of Mr. Kaufman's representation of Mr. Feinberg—during which Mr. Kaufman worked from his Connecticut office and provided legal services to Mr. Feinberg, who was located in New York— Mr. Kaufman was not admitted to practice law in either Connecticut or New York, although he was admitted to practice law in Massachusetts and the District of Columbia. *Id.* ¶ 6; Judgment and Order, In re: Motion of May 27, 2002 by the Board of Bar Overseers for Suspension of Attorneys Pursuant to Supreme Judicial Court Rule 4:03, (2), Ex. 12 to Estate SMF, ECF No. 336-5 at 109–10 (Dec. 5, 2023); Letter Re: Reinstatement of Attorney Following Administrative Suspension for Nonpayment of Registration Fees, Ex. 13 to Estate SMF, ECF No. 336-5 at 117 (Dec. 5, 2023).

Mr. Kaufman was administratively suspended from the Massachusetts Bar on July 26, 2002, and he was reinstated on May 8, 2007. Judgment and Order, In re: Motion of May 27, 2002 by the Board of Bar Overseers for Suspension of Attorneys Pursuant to Supreme Judicial Court Rule 4:03, (2), Ex. 12 to Estate SMF, ECF No. 336-5 at 109–10 (Dec. 5, 2023).

Mr. Kaufman was administratively suspended from the District of Columbia Bar for non-payment of dues for several periods between 1994 and 2009. Letter Re: Reinstatement of Attorney Following Administrative Suspension for Nonpayment of Registration Fees, Ex. 13 to Estate SMF, ECF No. 336-5 at 117 (Dec. 5, 2023). He has been an active member of the District of Columbia Bar since April 2009. *Id.*

In his affidavit in support of his request for reinstatement to the Massachusetts Bar, Mr.

3

Kaufman indicated that he was "[n]ot currently admitted" to any jurisdiction. Aff. in Supp. of Request for Reinstatement, Ex. 12 to Estate SMF, ECF No. 336-5 at 115 (Dec. 5, 2023). He also wrote that he "was at all times in good standing" with the District of Columbia Bar. *Id.*

In three affidavits in support of three motions for admission *pro hac vice* in May through August of 2010, Mr. Kaufman stated that he was admitted to practice in the Commonwealth of Massachusetts and the District of Columbia, and that he had been, at all times, a member in good standing. Derzaw SMF ¶ 28; *see* Aff. of Alan H. Kaufman in Supp. of Mot. for Pro Hac Vice Admission, Ex. 24 to Derzaw SMF, ECF No. 331-3 at 201–02 (Dec. 5, 2023); Aff. of Alan H. Kaufman, Ex. 26 to Derzaw SMF, ECF No. 331-3 at 204–05 (Dec. 5, 2023); Verified Statement, Ex. 26 to Derzaw SMF, ECF No. 331-3 at 211–12 (Dec. 5, 2023).

In August 2013, Kaufman LLC brought a lawsuit against Mr. Feinberg and related entities (the "Fee Case"), advancing claims for unpaid fees related to Mr. Kaufman's work on cases in New York and Pennsylvania. Estate SMF ¶ 30; Derzaw SMF ¶ 16. In that case, Kaufman stipulated that Mr. Kaufman had "performed legal services" and "provided legal advice and representation" to Mr. Feinberg. Estate SMF ¶ 11.

In November 2013, Mr. Derzaw reached out to the Connecticut Statewide Bar Counsel and learned that Mr. Kaufman had sought and received multi-jurisdictional practice (MJP) exemptions under the Connecticut Rule of Professional Conduct 5.5(f) for three matters between 2009 and 2013, but that he had not sought any such exemptions for matters related to his work for Mr. Feinberg. Derzaw SMF ¶¶ 20–22.

On June 11, 2014, Mr. Feinberg filed four nearly-identical grievance complaints against Mr. Kaufman in Connecticut, New York, Massachusetts, and the District of Columbia. *Id.* ¶ 26. The Complaints were co-signed by Mr. Derzaw and Norman Arnoff, both attorneys for Mr.

Feinberg. *Id.* ¶¶ 7–8. These complaints alleged that "Kaufman and his LLC represented, rendered legal services, and provided legal advice to entities that Feinberg and his family owned, to Feinberg and his family members from and in jurisdictions in which he was <u>not</u> licensed to practice law, i.e., Connecticut and New York." Disciplinary Compl. Against Alan H. Kaufman, Ex. 4 to Estate SMF, ECF No. 336-5 at 14 (Dec. 5, 2023) ("Disciplinary Compl.") (emphasis in original). They also alleged that Mr. Kaufman had misrepresented his bar status and disciplinary history, breached client confidentiality, and violated the rules of professional conduct. *See id.* at 18–25.

Mr. Feinberg admitted in a subsequent deposition that the grievance complaints were undertaken to "caus[e] trouble" for Mr. Kaufman, in retaliation for the Fee Case. Pl. Mot. to Stay, ECF No. 348 at 4 n.1 (Apr. 8, 2024) ("Mot. to Stay") (quoting Feinberg Dep. Tr. at 330 (Nov. 18, 2018)).[4]

On November 7, 2014, the State Grievance Committee of Connecticut dismissed the Connecticut grievance complaint and found that Mr. Kaufman did not engage in the unlicensed practice of law in any jurisdiction, misrepresent his credentials, breach confidentiality, improperly attempt to collect legal fees, or provide incompetent representation. *Feinberg v. Kaufman*, Grievance Compl. #14-0470, Grievance Panel Dismissal, Ex. 39 to Estate SMF, ECF No. 336-41 at 2–3 (Dec. 5, 2023).

On September 17, 2017, the Bar Disciplinary Council for the District of Columbia dismissed the grievance and found an absence of probable cause. Letter Re: Kaufman/Feinberg, Disciplinary Docket No. 2014-D176, Ex. 40 to Estate SMF, ECF No. 336-42 at 2–3 (Dec. 5,

---

[4] Although Mr. Kaufman has cited this quote in several filings, the Court has not received a transcript of the relevant deposition. But, because this admission would not change the outcome of the case, the Court addresses the statement as if it had been admitted, solely for the purpose of ruling on these motions.

2023). The D.C. Disciplinary Council also dismissed the referred grievance complaint filed in New York. Compl. ¶ 35.

On April 4, 2018, the Board of Bar Overseers in Massachusetts closed the Massachusetts complaint file. *Id.* ¶ 36.

### B.  Procedural History

On June 9, 2017, Plaintiffs filed the original Complaint in this action. Compl., ECF No. 1 (June 9, 2017).

The parties engaged in extensive motion practice, including the filing of two Amended Complaints, *see* ECF No. 51 (Sept. 28, 2017) and ECF No. 146 (May 27, 2019), as well as several motions to dismiss, *see* ECF No. 60 (Oct. 19, 2017), ECF No. 111 (Sept. 20, 2018), and ECF No. 150 (June 10, 2019).

On January 31, 2020, the Court granted motions to dismiss by Defendants Storch, Levin, and Derzaw. Order on MTDs. The Court terminated Attorneys Storch and Levin as Defendants; dismissed all claims based on grievance complaints filed in New York, Massachusetts, and the District of Columbia; and dismissed Count Four. *Id.*

On March 16, 2020, Mr. Derzaw and the Estate filed motions to strike several paragraphs of the Second Amended Complaint under Fed. R. Civ. P. 12(f). ECF Nos. 188–89 (Mar. 16, 2020).

On January 27, 2021, in the absence of any response by Plaintiffs, the Court granted the motions to strike and ordered Plaintiffs to submit a Third Amended Complaint. Order, ECF No. 246 (Jan. 27, 2021).

On February 16, 2021, Plaintiffs filed the Third Amended Complaint, the operative Complaint in this case. Compl.

On February 4, 2022, Mr. Derzaw and the Estate filed their Answers. ECF Nos. 273–74 (Feb. 4, 2022).

On December 5, 2023, Mr. Derzaw and the Estate filed motions for summary judgment. Derzaw Mot.; Estate Mot.

Plaintiffs never filed a response to the motions for summary judgment.

On March 28, 2024, the Court issued an Order stating that, in the absence of any response from Plaintiffs, it would consider the motions for summary judgment to be fully briefed and would not accept any additional filings beyond those already submitted. Order, ECF No. 347 (Mar. 28, 2024).

On April 8, 2024, Plaintiffs filed a motion to stay any decision on the pending motions for summary judgment, pending the resolution of an appeal in the Fee Case, *Kaufman LLC v. Estate of Feinberg et al.*, No. 3:13-CV-1259 (VAB). Mot. to Stay. The motion also included several substantive arguments related to the pending motions for summary judgment. *Id.*

On April 29, 2024, the Estate filed a motion to strike Plaintiffs' motion to stay, arguing that it was both untimely and in violation of this Court's order prohibiting further briefing on the motions for summary judgment. Mot. to Strike, ECF No. 351 (Apr. 29, 2024).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the

party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## II.    DISCUSSION

Plaintiffs' three remaining claims—common law and statutory vexatious litigation and civil conspiracy—arise solely from the grievance complaint submitted by Defendants to the Connecticut Statewide Bar Counsel (the "Grievance Complaint"), which alleged misconduct by Mr. Kaufman in the course of his provision of legal services to Mr. Feinberg. *See* Disciplinary Compl.; Order on MTDs.

Mr. Derzaw and the Estate raise the same four arguments in their motions for summary judgment: (1) Plaintiffs' claims are time-barred; (2) the grievance filing was supported by probable cause; (3) the *Noerr-Pennington* doctrine immunizes them from this suit; and (4) Plaintiffs' failure to comply with District of Connecticut Local Rule of Civil Procedure 5(e)(4) ("Local Rule 5(e)(4)") and this Court's orders warrants dismissal.

The Court first addresses the procedural argument regarding Plaintiffs' failure to comply with Local Rule 5(e)(4). Second, the Court provides an overview of the relevant caselaw and addresses Defendants' statute of limitations argument and substantive arguments regarding the viability of Plaintiffs' vexatious litigation and civil conspiracy claims. Third and finally, the Court will briefly address the issue of *Noerr-Pennington* immunity, to the extent necessary.

A. <u>Local Rule 5(e)(4)</u>

Local Rule 5(e)(4) lays out several different procedures for the filing of a document on the docket under seal. The rule provides, among other requirements, that counsel must file an unredacted version of any sealed filing. *See* D. Conn. L.R. Civ. P. 5(e)(4)(a). Federal Rule of Civil Procedure 41(a) ("Rule 41(a)") provides: "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

Mr. Derzaw and the Estate argue that summary judgment should be granted because Plaintiffs failed to file an unredacted copy of the Second Amended Complaint, as required by this Court's Order and Local Rule 5(e)(4), in their view a "fatal defect." Def. Richard Derzaw's Mem. of L. in Sup. Of Mot. for Summ. J., ECF No. 331-1 at 27 (Dec. 5, 2023) ("Derzaw Mem."); Def. Estate of Herbert Feinberg's Mem. of L. in Supp. of Mot. for Summ. J. and Mot. to Dismiss for Failure to Prosecute, ECF No. 335 at 26 (Dec. 5, 2023) ("Estate Mem."). In light of this failure, Defendants argue that the Court should dismiss the entire case under Federal Rule of Civil Procedure 41(a). *Id.*

The Court disagrees.

The Second Circuit has cautioned against the casual dismissal of actions under Rule 41(a). While "involuntary dismissal is an important tool for preventing undue delays and avoiding docket congestion[,] . . . it is also one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court." *U.S. ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 251 (2d Cir. 2004). Rule 41(a) therefore "is reserved for use only in the most extreme circumstances." *Id.*

Courts considering whether to dismiss a case under Rule 41(b) must consider the

following five factors: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had

received notice that further delays would result in dismissal, [3] whether the defendant is likely

to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the

balance between alleviating court calendar congestion and protecting a party's right to due

process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the

efficacy of lesser sanctions." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir.

2001) (internal quotations and citations omitted) (quoting *Alvarez v. Simmons Mkt. Research

Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988)). No single factor is dispositive. *Baptiste v.

Sommers*, 768 F.3d 212, 217 (2d Cir. 2014).

Here, dismissal under Rule 41(b) is not warranted. It is true that Plaintiffs failed to

comply with Local Rule 5(e)(4) by neglecting to file an unredacted version of the operative

Complaint, *see* ECF No. 250, and that this failure has prejudiced the Defendants. Over the past

three years, since the filing of the Complaint, Defendants have submitted Answers, motions for

summary judgment, and other filings, all without having access to a complete, unredacted

version of the operative Complaint. And this is not the first time that Plaintiffs have missed

deadlines or otherwise failed to act in accordance with the Federal Rules of Civil Procedure, the

Local Rules of Civil Procedure, or this Court's orders. *See, e.g.*, Order, ECF No. 246 (Jan. 27,

2021) ("The Court grants the motions to strike as Mr. Kaufman has not filed an opposition to

these motions"); Order, ECF No. 307 (Aug. 3, 2023) (noting "Plaintiff's failure to update the

Court on the outstanding discovery as required by a previous Order, *see* ECF No. 300 ('By

August 1, 2023 at 5:00 p.m., Plaintiff shall update the Court on any efforts to comply with the

outstanding discovery.')").

Given the extent of litigation that has already taken place in this case, and the significant

issues at stake, dismissal on the basis of a procedural violation is not appropriate. Instead, in accordance with the Second Circuit's general preference, the Court will address the merits of this case. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) ("[S]trong public policy favors resolving disputes on the merits."); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980) ("[A] court must not let its zeal for a tidy calendar overcome its duty to do justice." (quoting *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968))); *Peoples v. Fisher*, 299 F.R.D. 56, 59 (W.D.N.Y. 2014) ("While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort.").

Accordingly, the Court denies summary judgment on the basis of Defendants' failure to prosecute argument.

B. <u>The Vexatious Litigation and Civil Conspiracy Claims</u>

"The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages." *Spilke v. Wicklow*, 53 A.3d 245, 259 (Conn. App. Ct. 2012) (quoting *Bernhardt-Thomas Building Systems, LLC v. Dunican*, 944 A.2d 329, 334–35 (Conn. 2008)). In Connecticut, there exists both a statutory and common law cause of action for vexatious litigation. *Bernhardt-Thomas Building Systems, LLC*, 944 A.2d at 335. Both require the plaintiff to prove "that a civil action has been prosecuted." *QSP, Inc. v. Aetna Casualty & Surety Co.*, 773 A.2d 906, 919 (Conn. 2001). At common law, a plaintiff must additionally prove "want of probable cause, malice and a termination of suit in the plaintiff's favor." *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 912 A.2d 1019, 1026–27 (Conn. 2007). The statutory cause of action, under Conn. Gen. Stat. § 52-568, "differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages."

*Bernhardt-Thomas Building Systems, LLC*, 944 A.2d at 335 (quoting *Falls Church Group, Ltd.*, 912 A.2d at 1027).

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 835 A.2d 953, 973 (Conn. 2003) (internal quotation marks omitted) (quoting *Marshak v. Marshak*, 628 A.2d 964, 970 (Conn. 1993)). "[T]he essence of a civil conspiracy . . . [is] two or more persons acting together to achieve a shared goal that results in injury to another." *Id.* at 972. Importantly, there is no standalone claim for civil conspiracy. In other words, "to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 254 (Conn. 2006) (quoting *Harp*, 835 A.2d at 972 n.37).

Plaintiffs argue that the filing of the Grievance Complaint with the Connecticut Statewide Bar Counsel, without probable cause and for a vindictive purpose, constituted vexatious litigation. Compl. ¶¶ 72–103. Plaintiffs have also brought a claim of civil conspiracy, arguing that Defendants combined and conspired to commit a tortious act—vexatious litigation—for the purpose of harming Plaintiffs. *Id.* ¶ 111.

Because the civil conspiracy claim is derivative of Plaintiffs' vexatious litigation claims, to the extent that summary judgment is granted on the vexatious litigation claims, the Court likewise must enter judgment on the civil conspiracy claim. If the vexatious litigation claims survive, the Court will undertake a separate analysis of Plaintiffs' civil conspiracy claim.

### 1.   The Applicable Statute of Limitations Period

The statute of limitations for a claim of vexatious litigation is three years. *Balletti v. Alter*, No. CV-94-0541996-S, 1998 WL 712357, at *3 (Conn. Super. Ct. Sept. 25, 1998) ("Actions for vexatious litigation are subject to § 52-577, the tort statute of limitations."); Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). Section 52-577 "is an occurrence statute that, in the absence of any claim that the vexatious litigation occurred due to maintenance of the suits or as part of a continuous course of conduct, begins to run on the date that the vexatious litigation was filed." *Moorman v. Khan*, No. CV-09-5025473-S, 2014 WL 2922494, at *2 (Conn. Super. Ct. May 21, 2014) (quoting *Gianetti v. Greater Bridgeport Individual Practice Ass'n*, No. X02-CV-02-4001685–S, 2005 WL 2078546, at *7 (Conn. Super. Ct. July 21, 2005)); *see also Gionet v. Craft Magic, Inc.*, No. 115480, 1999 WL 417286, at *1 (Conn. Super. Ct. June 14, 1999) ("Although a cause of action for vexatious litigation accrues upon the termination of the prior suit in plaintiff's favor, the statute of limitations . . . begins to run at the moment the act or omission complained of occurs . . . [in other words,] on the date in which the prior action was instituted or maintained.").

Both Mr. Derzaw and the Estate argue that Plaintiffs' claims for common law and statutory vexatious litigation, as well as for civil conspiracy, began to run on the date of the submission of the Grievance Complaint, June 11, 2014. Derzaw Mem. at 11–14; Estate Mem. at 13–15 (citing Conn. Gen. Stat. § 52-577; *Silano v. Cooney*, No. CV-18-6076642-S, 2020 WL 639261, at *4, *aff'd*, 207 A.3d 84 (Conn. App. Ct. 2019); *Gionet*, 1999 WL 417286, at *1). Because Plaintiffs served the Complaint no earlier than July 7, 2017, *see* First Aff. of Serv., ECF No. 29 (Aug. 11, 2017), Defendants argue that the claims are untimely and judgment must enter

in their favor. Derzaw Mem. at 12; Estate Mem. at 15.

The Court agrees.[5]

" [A] claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor." *Scalise v. East Greyrock, LLC*, 85 A.3d 7, 11 (Conn. App. Ct. 2014) (quoting *Blake v. Levy*, 464 A.2d 52, 56 (Conn. 1983)). Thus, in order "for a vexatious litigation claim to be ripe for adjudication, the party must allege, among other facts, that the allegedly vexatious litigation has terminated in its favor." *Id.* "The application of General Statutes § 52-577 may be harsh because 'the plaintiff may very well be foreclosed from any remedy for what might have been an actionable injury'" if the three-year statute of limitations runs out while the underlying litigation is still pending. *Gionet*, 1999 WL 417286, at *1 (quoting *Burns v. Hartford Hospital*, 472 A.2d 1257, 1261 (1984)). Yet, although § 52-577 "may work to preclude an action even before it accrues[,]" courts in Connecticut have resisted adjusting their application of the statute of limitations, in order to save such claims. *Id.* ("[I]t is within the General Assembly's constitutional authority to decide when claims for injury are to be brought."); *Ecker v. West Hartford*, 530 A.2d 1056, 1067 (Conn. 1987) (Although actions may be barred before they even exist, "[i]t is not the function of the court to alter a legislative policy merely because it produces unfair results.").

In certain cases, the "continuing course of conduct" tolling provision available under

---

[5] Plaintiffs argue that "[a] condition precedent to the institution of an action for vexatious litigation is that the original action has terminated unsuccessfully," Mot. to Stay at 8, ECF No. 347 (Apr. 8, 2024) (citing *Scalise v. East Greyrock, LLC*, 85 A.3d 7, 11 (Conn. 2014)), and suggest that the statute of limitations cannot begin to run until the termination of the underlying lawsuit because such termination is necessary to a ripe claim for vexatious litigation, *id.* But that argument conflates the issue of accrual with the applicable statute of limitations period for a vexatious litigation claim. As noted above and further addressed below, Connecticut courts have consistently recognized this anomaly, but nonetheless have precluded claims brought within three years of the conclusion of the underlying legal action, if they were filed more than three years after the initiation of such a lawsuit. *See, e.g.*, *Gionet*, 1999 WL 417286, at *1 (acknowledging that § 52-577 "may work to preclude an action even before it accrues").

Connecticut law may be applied to claims of vexatious litigation. *See, e.g.*, *Balletti*, 1998 WL 712357, at *4 (considering whether the defendants' "continuous course of conduct" in maintaining the underlying, allegedly vexatious litigation tolled the statute of limitations); *Moorman*, 2014 WL 2922494, at *3 (weighing whether the defendants' "fail[ure] to withdraw their counterclaims once they knew they were baseless" served to toll the statute of limitations); *Shea v. Chase Manhattan Bank, N.A.*, No. CV-96-0149647-S, 2000 WL 1196370, at *5 (Conn. Super. Ct. July 27, 2000) (considering whether "[t]he act of maintaining a vexatious suit beyond three years from its commencement could be a bad act that itself," which could serve as the "act or omission complained of for purposes of § 52-577 in the context of § 52-568" (internal quotation marks omitted)).

In order for this tolling provision to apply, "there must be evidence of the breach of a duty that remained in existence after the commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong[.]" *Balletti*, 1998 WL 712357, at *4 (quoting *Blanchette v. Barrett*, 640 A.2d 74, 84 (Conn. 1994)). In the context of vexatious litigation, courts have generally interpreted tolling to require some ongoing vexatious activity by the defendant, beyond simply maintaining the suit. *See, e.g.*, *UHY, LLP v. Master-Halco, Inc.*, No. NNH-CV-10-6013492-S, 2014 WL 1011776, at *3 (Conn. Super. Ct. Feb. 11, 2014) (Because plaintiffs challenged not only the filing of the underlying suit, but also defendants' alleged disregard for evidence unfavorable to their theory of liability and their solicitation of testimony that was more favorable to their position, "the act complained of was not intended to be the singular event of the defendants commencing a baseless action against the plaintiffs, but was also intended to include the defendants' continued prosecution of that baseless action. . . . [Thus,] for the purposes of

determining the applicability of § 52-577, the act or omission complained of was not a discrete and isolated event, but an ongoing one that continued until the defendants withdrew their action." (internal quotation marks omitted)); *cf Moorman*, 2014 WL 2922494, at *3 (denying summary judgment because, although the underlying, allegedly vexatious claims had been filed more than three years before the initiation of the vexatious litigation suit, there remained "a material issue of fact as to whether the defendants committed any acts which would support a vexatious litigation action during the statutory period"); *Balletti*, 1998 WL 712357, at *4 (finding no course of continuing conduct where "the defendants ha[d] submitted affidavits attesting to the fact that they ceased to have any involvement in the case more than four years prior to the bringing of the present action").

Here, Plaintiffs did not serve the Complaint until more than three years after the filing of the Grievance Complaint. The claims are therefore untimely, unless tolled by a continuing course of conduct.

In the Complaint, with respect to the grievances, Plaintiffs have alleged only that "[o]n June 11, 2014, Feinberg filed four lengthy grievance complaints against Kaufman in Connecticut, New York, Massachusetts and the District of Columbia." Compl. ¶ 19.[6] These grievance complaints included "the presentation of lengthy, detailed documentation by Kaufman and defendants Feinberg, Arnoff and Derzaw that exceeded 150 pages[.]" *Id.* ¶ 23. The Complaint included no allegations regarding when and how this documentation was provided, or describing how it could extend the commission of the original wrong. Indeed, the copy of the Grievance Complaint included with Defendants' motions for summary judgment is lengthy and includes substantial documentation, all of which was submitted on June 11, 2014. *See*

---

[6] As noted above, any claims based on grievance complaints in states besides Connecticut have been dismissed for lack of jurisdiction. Order on MTDs at 21.

Disciplinary Compl. There is nothing in the record to suggest that additional documents or information were provided at a later time. Moreover, in subsequent filings, Plaintiffs have not alleged, let alone provided any basis for finding that, the process of pursuing the Grievance Complaint could constitute ongoing conduct that would toll the statute of limitations. In short, Plaintiffs have not shown that Defendants' pursuit of the Grievance Complaint constituted a wrong separable from the initial filing of the Complaint.

As to Plaintiffs' allegations regarding Defendants' actions in the Fee Case, that litigation cannot form the basis of a claim for vexatious litigation because, thus far, that case has resolved in favor of the Estate. *See* Judgment, *Kaufman LLC v. Estate of Herbert Feinberg et al.*, No. 3:13-cv-1259 (VAB) (Dec. 20, 2022), ECF No. 488 at 1 ("On November 21, 2022, after deliberation, the jury returned a verdict in favor of the defendants, Estate of Herbert Feinberg et al and against Kaufman LLC. It is therefore ORDERED, ADJUDGED and DECREED that judgment is entered in favor of the defendants and against plaintiff."); *Scalise*, 85 A.3d at 11 ("[F]or a vexatious litigation claim to be ripe for adjudication, the party must allege, among other facts, that the allegedly vexatious litigation has terminated in its favor."). Additionally, the case remains pending on appeal, meaning that it has yet to terminate fully, as required for a vexatious litigation claim. *See Scalise*, 85 A.3d at 12 (concluding that "the underlying litigation upon which the plaintiffs' vexatious litigation claim is founded ha[d] yet to terminate fully in their favor[,]" where some claims had been remanded back to an arbitrator, damages had yet to be calculated, and "the underlying litigation [was] still subject to the possibility of appeal[,]" and that the court "therefore lacked jurisdiction over the action").

Because there is no basis to find that Defendants engaged in a course of continuing conduct with respect to the Grievance Complaint, Plaintiffs' claims for vexatious litigation are

untimely. And, as the civil conspiracy claim is derivative of the vexatious litigation claims, Defendants are entitled to judgment on that claim, too.

Accordingly, the Court grants summary judgment as to all three claims, based on the expiration of the applicable statute of limitations period.

### 2.  *The Merits of the Underlying Claims*

Even if Plaintiffs' claims were timely, they may still be dismissed as a matter of law, if there was probable cause for the Defendants to file the Grievance Complaint. "[I]n the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *Id.* In both statutory and common law causes of action, "[t]he existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law." *Falls Church Group, Ltd.*, 912 A.2d at 1027 (quoting *Brodrib v. Doberstein*, 140 A. 483, 484 (Conn. 1928)). As a result, the Court will engage in this analysis, as well.

"Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Solomon v. Aberman*, 493 A.2d 193, 196 (Conn. 1985) (citing *Texas v. Brown*, 460 U.S. 730 (1983)). "The standard for determining probable cause is not whether there are adverse rulings by the court or whether the claim is ultimately determined to be without merit." *Schaeppi v. Unifund CCR Partners*, 127 A.3d 304, 318 (Conn. App. Ct. 2015), *cert. denied* 128 A.3d 953 (Conn. 2015). "As is implied by its phrasing, the standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated the lawsuit." *Embalmers' Supply Co. v. Giannitti*, 929 A.2d 729, 740 (Conn. 2007). "[T]he critical question [is] whether 'on the basis of the facts known by the law firm, a reasonable

attorney familiar with Connecticut law would believe' he or she had probable cause to bring the lawsuit." *Id.* (quoting *Falls Church Group, Ltd.*, 912 A.2d at 1032).

Only those claims "which *all* reasonable lawyers agree totally lack merit" will be found to lack probable cause. *Falls Church Group, Ltd.*, 912 A.2d at 1031 (emphasis in original). "This lenient standard for bringing a civil action reflects the important public policy of avoiding the chilling of novel or debatable legal claims and allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." *Id.*

Mr. Derzaw and the Estate argue that Plaintiffs' claims fail on the merits because the Grievance Complaint was supported by probable cause, an "absolute protection" against an action for vexatious litigation. Estate Mem. at 16; Derzaw Mem. at 15 (citing *Falls Church Grp., Ltd.*, 912 A.2d at 1027). More specifically, in support of the unauthorized practice of law charge, they cite Mr. Kaufman's lack of admission to practice law in Connecticut; his performance of legal services and provision of legal advice to Mr. Feinberg from his Connecticut home; and his communications to Mr. Feinberg and to third parties, in which he held himself out as Mr. Feinberg's attorney without the involvement of local counsel. Estate Mem. at 18; Derzaw Mem. at 20. In further support of the Grievance Complaint, Defendants cite other instances of misconduct, including Mr. Kaufman's failure to properly advise Mr. Feinberg regarding certain transactional matters; misrepresentations in affidavits and applications submitted by Mr. Kaufman to various courts; and his filing of an unredacted complaint in the Fee Case, which included confidential information and communications protected by the attorney-client privilege. Derzaw Mem. at 7; Estate SMF ¶ 30.

The Estate additionally argues that, even if the claims were ultimately meritless, it is entitled to summary judgment because Mr. Feinberg acted on the advice of counsel when he filed

the Grievance Complaint. Estate Mem. at 21–22. Because he reasonably relied on his attorneys to conduct an investigation and review of the relevant legal authorities in determining whether there existed an adequate basis for filing the Grievance Complaint, Mr. Feinberg had a reasonable belief in the validity of the claims in the Grievance Complaint, predicated on his attorneys' professional legal opinions. *Id.* at 22.

Mr. Derzaw and the Estate both emphasize that a lack of probable cause cannot be inferred from the termination of an underlying action in favor of the plaintiff. *Id.* at 20–21; Derzaw Mem. at 18. Rather, the relevant standard is whether "a person of ordinary prudence [would] believe probable cause existed to support the remaining allegations against Kaufman." Estate Mem. at 20; Derzaw Mem. at 17. And, they argue that Connecticut courts have cautioned against applying too high of a standard for probable cause, in order to avoid infringing "upon the freedom of attorneys to pursue novel, although potentially successful, legal theories." Derzaw Mem. at 17 (quoting *Falls Church Grp., Ltd.*, 912 A.2d at 1032).

Based on the facts known to Mr. Feinberg and Mr. Derzaw at the time of filing of the Grievance Complaint, they argue, probable cause existed and the vexatious litigation claims therefore must fail.

Plaintiffs argue that the Court cannot rule on these motions for summary judgment—and must stay this case—because the Estate has challenged this Court's directed verdict in the Fee Case, which held that Mr. Kaufman did not engage in the unauthorized practice of law. Mot. to Stay at 1–2. Plaintiffs argue that "[t]o find in the Estate's favor the Court would have to rule contrary to its directed verdict decision [and] contrary to the grievance panel decision" and emphasizes that to do so would "risk reversal of the granting of the SJ motion if the directed verdict decision is upheld by the Second Circuit." *Id.* at 2. In Plaintiffs' view, because various

administrative and judicial bodies have found that Mr. Kaufman did not engage in the unauthorized practice of law, Defendants could not have had probable cause to file the Grievance Complaint.

The Court disagrees.

The issues decided in the Fee Case and the grievance process were distinct from the issue in this case. Although this Court and the Grievance Committee ultimately found that there was insufficient evidence to prove that Mr. Kaufman engaged in the unauthorized practice of law, no court has yet considered the question of whether Defendants had probable cause to file the Grievance Complaint. The issue therefore cannot be "res judicata" and the outcome of the appeal in the Fee Case would not alter any judgment issued in this case. *See Embalmers' Supply Co.*, 929 A.2d at 740 ("[P]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause." (quoting *Falls Church Group, Ltd.*, 912 A.2d at 1032)); *Schaeppi*, 161 Conn. App. at 53 ("The standard for determining probable cause is not [based upon] whether there are adverse rulings by the court or whether the claim is ultimately determined to be without merit."). The Court therefore proceeds to consider whether there existed probable cause for the filing of the Grievance Complaint.

Any determination regarding the existence of probable cause necessarily depends on the facts and law underlying the claims at issue. Here, Plaintiffs challenge the Grievance Complaint submitted to the Connecticut Statewide Bar Counsel. The Grievance Complaint primarily alleged that Mr. Kaufman had engaged in the unauthorized practice of law, but also contained allegations that he had misrepresented his bar status and disciplinary history, breached client confidentiality, and violated the rules of professional conduct.

Conn. Gen. Stat. § 51-88 provides, in relevant part, that "a person who has not been admitted as an attorney under the provisions of section 51-80 . . . shall not: (1) Practice law or appear as an attorney-at-law for another in any court of record in this state, [or] (2) make it a business to practice law or appear as an attorney-at-law for another in any such court[.]"

Connecticut courts have not adopted a clear definition of what constitutes the practice of law. *Robertson v. Town of Stonington*, 750 A.2d 460, 464 (Conn. 2000) ("Attempts to define the practice of law have not been particularly successful. The reason for this is the broad field covered. The more practical approach is to consider each state of facts and determine whether it falls within the fair intendment of the term." (quoting *Statewide Grievance Comm. v. Patton*, 683 A.2d 1359, 1361 (Conn. 1996) and *Grievance Comm. of Bar of New Haven v. Payne*, 22 A.2d 623, 625 (Conn. 1941) (internal quotation marks omitted))). "The practice of law is not limited to appearing before state courts; it includes giving legal advice and drafting documents regardless of whether it occurs in a 'court of record, 'and regardless of whether the practice is carried on as a business." *In re Peterson*, 163 B.R. 665, 672 (Bankr. D. Conn. 1994) (citing *Grievance Comm. of the Bar of Fairfield County v. Dacey*, 222 A.2d 339, 345–46 (Conn. 1966), *appeal dism'd*, 386 U.S. 683 (1967)).  Indeed, "it is clear that § 51–88 forbids the performance of any act both in and out of court that is commonly understood to be the practice of law by persons not admitted to the bar . . . ." *Windover v. Sprague Technologies*, 834 F. Supp. 560, 566 (D. Conn. 1993); *Payne*, 22 A.2d at 625–26.

The relevant question before this Court then is whether "on the basis of the facts known by [Defendants], a reasonable attorney familiar with Connecticut law would believe" that they had probable cause to allege that Mr. Kaufman, without having been admitted as an attorney, performed any act in or out of court that is commonly understood to be the practice of law.

Significantly, with respect to this inquiry, "[t]he question is not whether [Mr. Feinberg or any of his counsel] thought the facts to constitute probable cause, but whether [this Court] thinks they did." *Falls Church*, 912 A.2d at 1030 (citations and internal quotation marks omitted). The answer is yes.

It is undisputed that Mr. Kaufman provided legal services to Mr. Feinberg between 2009 and 2010. The Employment Agreement stated that Mr. Feinberg was "hiring [Mr. Kaufman] for the position of in house counsel for Gotham Enterprises & Affiliates, LLC[.]" Ex. 3C to Estate SMF, ECF No. 336-4 at 13–14 (Dec. 5, 2023). The letter described the services that Mr. Kaufman was expected to provide: "ongoing legal advice on current or future legal matters relating to the company's businesses or its management, providing representation on all personal and business legal matters that may arise such as starting and pursuing legal actions, defending legal actions against the company or its management, conducting depositions[.]" *Id.*

Moreover, Kaufman filed the Fee Case to collect fees allegedly owed by Mr. Feinberg for the legal services that Mr. Kaufman had provided. *See* Compl. ¶¶ 1, 3; *Kaufman LLC v. Estate of Feinberg*, No. 3:13-CV-1259, ECF No. 1 (Aug. 28, 2013) (describing the case as "an action for a declaratory judgment by a law firm against former clients" based on Mr. Feinberg's "fail[ure] to pay Kaufman's invoices for services"); Ruling and Order on Mot. for Summ. J., *Kaufman LLC v. Estate of Feinberg*, No. 3:13-CV-1259, ECF No. 423 (May 17, 2022) ("In 2009 and 2010, Mr. Kaufman provided legal services under the Employment Agreement, including matters both expressly recited in the Employment Agreement and other matters that arose after it was signed. Defs. Local R. 56(a)(1) ¶ 4.").

Similarly, it is undisputed that, during the relevant time period, Mr. Kaufman was not admitted to practice in Connecticut, the jurisdiction in which his office was located and from

which he provided his services, or New York, the jurisdiction in which Mr. Feinberg resided and where many of the deals were centered. During this time, Mr. Kaufman sought *pro hac vice* admission or an MJP exemption for work that he performed on other cases. Derzaw SMF ¶¶ 20–21. He did not seek any such exemptions or admissions for any work conducted on behalf of Mr. Feinberg. *Id.*

Additionally, based on the records provided by Defendants, it appears that Mr. Kaufman submitted affidavits and applications to various courts that were, at the very least, misleading regarding his bar membership status history. *See* Derzaw SMF ¶ 28 ("Derzaw then reviewed various pro hac vice affidavits filed by Kaufman in the course of Kaufman's work for Feinberg and noticed inconsistences/inaccuracies between and amongst the various affidavits in that they indicated that he was a member in continuous good standing of the bars of Massachusetts and the District of Columbia but for many years he was suspended from practicing law in such jurisdictions."); Aff. in Supp. of Mot. for Pro Hac Vice Admission, Ex. 24 to Estate SMF, ECF No. 336-6 at 59 (Dec. 5, 2023) ("I was admitted to practice law in the Commonwealth of Massachusetts in 1971 where I was, at all times, in good standing, and am currently a member in good standing of the Bar of the District of Columbia."); Aff. of Alan H. Kaufman, Ex. 25 to Estate SMF, ECF No. 36-6 at 62 (Dec. 5, 2023) ("I was admitted . . . to practice law in the Commonwealth of Massachusetts in 1971 where I was, at all times, in good standing, and am currently a member in good standing of the Bar of the District of Columbia."); Authorized Statement in Supp. of Mot. for Admission Pro Hac Vice of Alan Kaufman, Attorney, Pursuant to Pa. R. Civ. P. 1012.1, Ex. 26 to Estate SMF, ECF No. 336-6 at 69 (Dec. 5, 2023) ("I have never been suspended, disbarred or otherwise disciplined since being admitted."). Indeed, the District of Columbia Office of Disciplinary Counsel did find that Mr. Kaufman had misrepresented his

bar admission status when seeking *pro hac vice* admission with the assistance of local counsel, although it accepted his explanation that these misrepresentations were the result of carelessness. Letter Re: Kaufman/Feinberg, Disciplinary Docket No. 2014-D176, Ex. 40 to Estate SMF, ECF No. 336-42 at 2–3 (Dec. 5, 2023). It cautioned Mr. Kaufman "that he is responsible for the accuracy of pleadings that he signs." *Id.* at 2. The Office of Disciplinary Counsel also cautioned Mr. Kaufman regarding the disclosure of client confidences in the Fee Case, although it declined to pursue the matter further. *Id.* at 3.

Finally, the docket of the Fee Case reflects that Kaufman initially filed an unsealed Complaint referencing confidential attorney-client communications, which was later sealed by Judge Covello upon Mr. Feinberg's request. Derzaw SMF ¶ 27.

Based on these facts, even if the case was not strong, or likely to succeed, there was clearly a basis for a Grievance Complaint, which would prompt the appropriate body to investigate Mr. Kaufman's bar membership and ensure that the services he had provided did not violate the rules of professional conduct.

Plaintiffs argue that the Grievance Complaint was filed years after the termination of Mr. Kaufman's relationship with Mr. Feinberg and emphasize Mr. Feinberg's admission that the Grievance Complaint had been filed maliciously, in retaliation for the Fee Case. *See* Compl. ¶¶ 28–30. But although these facts would certainly be relevant to the malice element of the common law claim for vexatious litigation, even a finding of malice cannot defeat the existence of probable cause. *See Falls Church Group, Ltd.*, 912 A.2d at 1027 ("Malice may be inferred from lack of probable cause. . . . The want of probable cause, however, cannot be inferred from the fact that malice was proven.").

Likewise, the dismissal of the Grievance Complaint, or the finding in the Fee Case that

Defendants failed to prove that Mr. Kaufman engaged in the unauthorized practice of law, does not establish Plaintiffs' cause of action for vexatious litigation. The Grievance Committee's determination that there was not probable cause to pursue the grievance does not bear on this Court's analysis of whether probable cause existed to file the grievance in the first place. *See Ogren v. Lassen*, No. CV-12-6014603, 2013 WL 6916695, at *4 (Conn. Super. Ct. Nov. 27, 2013) ("Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause.").

In reaching this conclusion as a matter of law, the Court also has considered the cost to Plaintiffs of Defendants' filing of the Grievance Complaint. The Connecticut Statewide Grievance Committee process is confidential. *See* Grievance Panel Comm. R. Proc. 1(D) ("All matters received by the Committee shall be confidential except as otherwise provided by law."). And here, the Grievance Complaint filed against Kaufman was resolved within less than four months. *See Feinberg v. Kaufman*, Grievance Compl. #14-0470, Grievance Panel Dismissal, Ex. 39 to Estate SMF, ECF No. 336-41 at 2–3 (Dec. 5, 2023) (finding, on November 17, 2014, that "the Respondent did not: engage in the unlicensed practice of law in any jurisdiction; misrepresent his credentials; breach the confidentiality of any privileged communications; improperly attempt to collect legal fees; provide incompetent representation"). As a result, the relative harm to Plaintiffs, as compared with the filing of a civil lawsuit in state or federal court, was relatively limited.

Based on all of this information, there is no genuine issue of fact as to whether Defendants had probable cause to file the Grievance Complaint, even if it arguably should have been submitted earlier, and even if their subjective intent was malicious.

Accordingly, because the Court finds that there is no genuine issue of material fact as to

whether probable cause existed to file the Grievance Complaint, and that as a matter of law, probable cause did exist, Defendants' motions for summary judgment are granted as to Plaintiffs' vexatious litigation claims. The Court need not reach the question of the Estate's advice-of-counsel defense.[7] And, because no substantive tort claims remain, the Court must grant summary judgment as to Plaintiffs' civil conspiracy claim as well.

C.   The *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine "is derived from First Amendment principles guaranteeing the right to petition the government." *Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*, 964 F. Supp. 624, 626 (D. Conn. 1997) It holds that "attempts to influence legislative, executive, administration or judicial action are immune from liability by virtue of the First Amendment right to petition the government for a redress of grievances." *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 335 (S.D.N.Y. 2019), *as amended* (Feb. 7, 2019) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136–39 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 669–70 (1965)). *Noerr-Pennington* immunity does not extend to litigation that "constitutes 'a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Hartford Life Ins. Co.*, 964 F. Supp. at 626–27 (quoting *Noerr*, 365 U.S. at 144).

Both Mr. Derzaw and the Estate argue that all three counts of Plaintiffs' Complaint are barred by the *Noerr-Pennington* doctrine because the act of filing the Grievance Complaint constituted "petitioning activity" that would qualify for *Noerr-Pennington* immunity. Estate

---

[7] As the Court does not rely on the Estate's advice-of-counsel defense in rendering its decision, Plaintiffs' argument—that Defendants' motions for summary judgment are premature and that this Court must stay any action on those motions until Plaintiffs are able to depose Attorneys Storch and Levin—is unavailing. Mot. to Stay at 7 ("Given that Kaufman had been diligently seeking depositions of the Estate's counsel for years before the Estate Motion was filed, we believe that action on that motion should be stayed until such discovery is complete."). Any proposed depositions of Attorneys Storch and Levin are unnecessary, given that the Court has determined, as a matter of law, that there was probable cause to file the Grievance Complaint.

Mem. at 24; Derzaw Mem. at 23–24.

Given that the Court has determined that Plaintiffs' claims were untimely and that there was probable cause to file the Grievance Complaint, the Court need not address Defendants' defense of *Noerr-Pennington* immunity. And, because the *Noerr-Pennington* doctrine stems from First Amendment principles, and application of such principles is unnecessary to resolve the issues at hand, it is best not to address the doctrine's application here. *Cf. Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 103 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). But, if Plaintiffs' claims had been timely, or if there had not existed probable cause to file the Grievance Complaint, the *Noerr-Pennington* doctrine would have immunized Defendants from liability.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions summary judgment as to all counts of the Complaint.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED at New Haven, Connecticut, this 11th day of May, 2024.

_____ */s/ Victor A. Bolden* _____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
